FACTUAL BACKGROUND, CONSIDERATION OF TIMELINESS AND STANDING, ORDER FOR FURTHER HEARING
The above-entitled appeal was considered on the record developed at the county tax appeal board hearing, together with legal briefs submitted by the parties in response to the legal issues set out by the State Tax Appeal Board ("Board") in its Order of September 14, 2005. Towe Farms, Inc. ("Towe Farms") was represented at the county hearing by its manager Edward Towe and, during the proceedings before this Board, by attorney Tom Towe. The Department of Revenue ("DOR") was represented at the county hearing by Lee Zuelke of the Custer County Appraisal Office and, in the briefing before this Board, by attorney Derek Bell. Both parties have been given an opportunity to brief the issues before the Board, and the legal issues are now ready for decision.
 STATEMENT OF THE ISSUE
There are two threshold legal issues before the Board in this appeal. The first issue is whether Towe Farms made a timely application for review of the classification of certain property for tax year 2004. The second issue is whether Towe Farms had "standing" to file for a review of the classification of certain properties in which it asserted ownership.
 FACTUAL BACKGROUND
1. On July 28, 2004, Appellant Towe Farms, Inc. filed a "Property Tax Appeal Form" with the Custer County Tax Appeal Board, appealing the classification on nine properties with separate tax ID numbers. (State's Exhibit 1). In the "Reasons for Appeal" portion of the form, Appellant stated:
 No assessment or appraisal was provided. The Property has been repossessed and the County Treasurer refuses to send notices to Towe Farms, Inc., the original vendor. The property fully qualifies for the taxation as agricultural land under Section 15-7-202, MCA. in that the owner's tenant markets considerably more than $1500 in annual gross income from the raising of agricultural products.
2. It appears that all of the properties included in this appeal were at one time part of a large, undivided parcel owned by Towe Farms, Inc. However, these properties, most of them 40 acres in size, were split off and sold to various other parties, usually under some kind of financing arrangement.
3. At the time of these sales transactions the parties recorded "Notices of Purchaser's Interest" with the clerk and recorder, and submitted realty transfer certificates showing the interest of the purchaser in the property.
4. When these new parcels were under contract to purchasers, the properties were re-classified as non-qualified agricultural properties by the Department of Revenue according to Section 15-7-202(1)(b), MCA. These tracts were less than 160 acres and greater than 20 acres, establishing a presumption that they were non-qualified agricultural land.
5. The Custer County Tax Appeal Board held a hearing on this matter on August 4, 2005. The decision of the Board was adverse to Towe Farms, Inc. The county board cited Section 15-15-102, MCA, that "the application [for a reduction in valuation] must be submitted on or before the first Monday in June or 30 days after receiving either a notice of classification and appraisal or determination after review from the department, whichever is later." The county board noted that the Towe Farms application was dated July 24, 2004, which would be beyond the deadline provided in statute. As a second reason for its decision, the county board stated that "the appellant does not own the property in question and therefore has no standing."
6. From the decision of the county tax appeal board, the Appellant initiated this appeal on August 17, 2005.
 TAXPAYER'S CONTENTIONS
On the first issue in this appeal, Towe Farms' position is that, under the terms of the statute (15-7-102(3)), it had 30 days from the receipt of its notice of classification and appraisal to file its appeal. Since it did not receive a notice, the 30-day period could never start to run, and its filing on July 28, 2004, was thus timely.
In regard to the CTAB finding that it lacked standing for this appeal, Towe Farms' argument relates to the chain of title which is shown for each of the properties in dispute. It asserts that there may have been several attempted conveyances, often by a contract for deed, but that these contracts were never consummated into a transfer of title. Typically too, financial institutions sought to preserve their interest in the property by claiming against any interest that the equitable owner (contract purchaser) may have in the property. While these filings appear in the chain of title, they do not affect the status of Towe Farms as the last party to claim title under a warranty deed.
The result of all these deeds filed in the public record by the various parties that have any conceivable interest in the property is a confusing array of filings. Most of the filings are for interests that are either equitable, in the case of grantees under a contract for deed, or security, in the case of quit claim deeds filed by various financial entities against the contract purchasers.
As confusing as some of these title records are, Towe Farms asserts that it remains the last grantee under a warranty deed. It further asserts that it is the true legal owner of the property.
Further confusion is added to the chain of title by the use of such documents as a "statutory warranty deed". This is not a legal instrument which is used for the transfer of a real property interest in Montana.
Typically in transactions such as this one the original grantor, Towe Farms, would retain a quit claim deed, either in person or through an escrow agent, to allow the reconveyance of the interest of the purchaser in the event of default or other disability. For whatever reason, that was not done in this case. But, according to Towe Farms, it does not affect the fact that it retains the superior title, a warranty deed, and there is no evidence in all the other filings shown in the public record that any party extinguished Towe Farms' title to these properties.
In its appeal to this Board, Appellant Towe Farms states that "the claim of the [county] board that the taxpayer does not own the property is preposterous. The property was sold on a contract and repossessed. No one else is available to pay the taxes and no one else has standing."
 DOR CONTENTIONS
Section 15-15-102, MCA, requires a taxpayer to make and file with the county clerk and recorder a written application for reduction or change in the appraisal of a piece of property. This application is due on or before the first Monday in June or 30 days after receipt of the notice of classification and appraisal. DOR contends that Towe Farms failed to comply with either condition. Towe Farms' appeal was clearly filed after the June deadline since the taxpayer did not sign it until July 28, 2004. DOR further maintains that Towe Farms is not the `taxpayer' contemplated by Section 15-15-102, MCA and that "the only taxpayers entitled to bring an appeal with the county tax appeal board were those who received notices from the Department." None of these taxpayers initiated an appeal within 30 days of receiving the notice. Thus, no timely appeal was made.
Citing Section 15-7-102, MCA, in regard to the second issue in this matter, DOR states that, when property changes hands, DOR does not have to give notice to the "new owner or purchaser under contract for deed" until a realty transfer certificate is filed. In this case, Towe Farms may well be seeking repossession of the property, but until such time as a transfer certificate is filed, Towe Farms is not entitled to receive notice per the terms of the statute. DOR maintains that under Montana law it is the responsibility of the taxpayer to assure that the property records accurately reflect the true ownership of the property. If the ownership record is inaccurate or incomplete, it is the responsibility of the taxpayer to rectify it.
DOR concedes that the public filings for these parcels present a confusing and complex picture of ownership. However, it is not the responsibility of the DOR to resolve all actual and potential claims on the title just to send out a tax notice.
DOR summarizes its position as follows:
 Because the Department never received notification of any transfer to Towe Farms, the Department could not arbitrarily change who received a notice without first receiving an accurately prepared realty transfer certificate-no matter how unjust that result may appear to Towe Farms.
 BOARD DISCUSSION
There are two threshold legal issues to be determined in this appeal. The first is whether Towe Farms made a timely application for review of the land classification for tax year 2004. On this issue the Board agrees with DOR and we hold that Towe Farms did not meet the statutory deadline and is thus precluded from seeking review for 2004.
Section 15-15-102, MCA, provides that "the taxpayer or the taxpayer's agent" shall "make and file a written application for reduction with the county tax appeal board." The deadline as provided in the statute is the first Monday in June of the year in question, "or 30 days after receiving either a notice of classification and appraisal or determination after review under15-7-102(3) from the department, whichever is later."
It is undisputed that Towe Farms filed its application after the deadline in the first week of June, and it appears that the actual date that it was received by the county tax appeal board was July 28, 2004. (Statement of Custer County Tax Appeal Board as stated on County Tax Appeal Form). The statute cited in the previous paragraph allows for extension beyond the June 30th
deadline in two instances. One is where there is an AB-26 review, which was not done here. The other instance is where the taxpayer has received a notice of classification and appraisal. In that instance the taxpayer has 30 days from the date of receipt of the notice to initiate an appeal, even if it is beyond the June deadline.
Towe Farms uses the argument that it did not receive a notice of classification and appraisal, so the 30 days could never start to run. Therefore, according to Towe Farms, its appeal was made in a timely fashion.
However, under 15-7-102, MCA, there are only certain instances where a notice of classification and appraisal is sent out by DOR. Those instances, as specified in 15-7-102(1)(a)(i)-(iv), are where there has been a change in ownership, classification, valuation, or the addition or subtraction of personal property affixed to the land. It does not appear that any of those instances occurred on the properties involved here so that there would not have been a notice of classification and appraisal sent for tax year 2004.
In any event, Section 15-7-102, MCA, instructs the department to send the notice of classification and appraisal to the "owner or purchaser under contract for deed" (emphasis added). According to the testimony of appraiser Lee Zuelke, the practice of the department was to send the notice to the contract purchaser. It appears that such practice is entirely consistent with the terms of the statute.
Even if Towe Farms had "standing", which issue will be addressed presently, in order to comply with the statute Towe Farms would have had to initiate its appeal by the first Monday in June, and its failure to do so precludes consideration of its appeal in 2004.
The remaining issue concerns whether Towe Farms has standing as a property owner to request review of the DOR's classification of the land as non-qualified agricultural land. . This relates to tax year 2005, since we have determined that the request for 2004 was not timely.
Section 15-7-202(6), MCA, states that "[t]he department may not classify land less than 160 acres as agricultural unless the owner has applied to have land classified as agricultural land." The key word here, for "standing" analysis, is "owner". In reviewing the spreadsheet prepared by the appraiser's office reflecting the records from the clerk and recorder's office (State's Exhibit B-1 of the county hearing record), Towe Farms is listed in the chain of title. In fact Towe Farms is shown as the last undisputed grantee in a warranty deed. Subsequent to the Towe Farms' deeds, various contracts and quit claims were recorded, although the quit claims are generally back to the parties who took a contract from Towe Farms.
There is no doubt that this is a confusing and complex chain of title, and it would certainly clarify the situation if Towe Farms pursued their quiet title remedies or produced quit claim deeds relating back to their original grant. That said, it appears that they do have some kind of legitimate ownership interest in these properties that should be recognized, and it seems a harsh remedy to deprive them of the opportunity to be able to make an argument for re-classification of the properties in question simply because they do not have a clean chain of title.
Two other facts in this case lend support to this result. One is that Towe Farms is apparently the party that is paying the taxes on these properties at the present time. Such action supports the idea that they have some substantial interest in the properties and effectively rebuts the Department's assertions that Towe Farms is not the "taxpayer" contemplated by the statute.
The second fact is that the properties in question have not been developed in any way. The purchasers under the contracts for deed have apparently defaulted out of the picture and the tracts remain as grazing land without any improvements. Even though Towe Farms has not taken the proper steps to secure their position in the chain of title, particularly for the purpose of receiving notice, it does not mean that they do not have a legally recognizable interest in the property.
Since the county board did not proceed to a decision on the classification issue, due to its view of the standing of Towe Farms, we will need to develop a record and make a decision on whether Towe Farms can qualify for agricultural classification for the properties in 2005. Accordingly, this Board will contact the parties to schedule such a hearing, and notes that the taxpayer has requested a hearing in Billings.
 CONCLUSIONS OF LAW
1. The State Tax Appeal Board has jurisdiction over this matter. Section 15-2-301, MCA.
2. Subject to certain exceptions, an appeal of a classification or appraisal by a taxpayer is due on the first Monday of June of the tax year in question. Section 15-15-102, MCA. Appellant cannot contravene this requirement by arguing that he did not receive a notice of classification and appraisal. Other than in a year where there is a new statewide appraisal, there are only limited circumstances, as provided in Section 15-7-102, MCA, where a new notice of classification and appraisal is sent out by the DOR and none of those circumstances applies here.
3. Even if a new notice of classification and appraisal had been sent out, Section 15-7-102, MCA, provides that the department should send it to the "owner or purchaser under a contract for deed." Where the evidence is that the department routinely sends the notice to the purchaser under a contract for deed, the statute has been complied with.
4. Section 15-7-202, MCA, provides that "[t]he department may not classify land less than 160 acres as agricultural unless the owner has applied to have the land classified as agricultural land." Towe Farms retains title to the properties in question and can apply as an "owner".
5. The appeal of Towe Farms is denied as to the 2004 appeal and the appeal of the 2005 classification will be set for hearing before this Board.
 ORDER
IT IS THEREFORE ORDERED by the State Tax Appeal Board of the State of Montana that the taxpayer's appeal for 2004 is dismissed due to timeliness and the appeal on classification for 2005 will be set for hearing before this Board.
GREGORY A. THORNQUIST, JOE R. ROBERTS, SUE BARTLETT. *Page 1